UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROLLAND H. EASTERDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:06-CV-37 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of plaintiff's motion for summary judgment [Doc. 10] and the defendant's motion for summary judgment. [Doc. 12]. Plaintiff Rolland H. Easterday seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 30, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

> 3. The claimant's degenerative joint disease, affective mood disorder, and right eye blindness are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has retains [sic] the following residual functional capacity to perform medium exertion, provided he has no exposure to public work.
>
> 7. The claimant's past relevant work as a kitchen worker did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).
>
> 8. The claimant's medically determinable affective mood disorder, tobacco abuse, degenerative joint disease, and right eye blindness do not prevent the claimant from performing his past relevant work as a kitchen worker.
>
> 9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 19-20).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823

2

F.2d 918, 920 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

Plaintiff argues that the ALJ erred in his residual functional capacity ("RFC") determination and in his findings at Steps 3 and 4. Plaintiff contends that the extent of the ALJ's evaluation was that the plaintiff had the "residual functional capacity to perform medium exertion, provided he has no exposure to public work." (Tr. 19). Plaintiff complains that the RFC finding did not include the limitations from his right eye blindness, although the ALJ found this to be a severe impairment. (Tr. 17). Specifically, he points out that his former boss noted that he had been released as an employee due to being unable to perform the duties that were asked of him, noting that his glass eye caused an inability to use any kind of cutting machinery because of a lack of depth perception. (Tr. 94). In addition, he notes that during a consultative psychological examination, he reported coordination problems, including bumping into things because of his lack of a right eye and that consultative examiner Dr. Summers noted that plaintiff had a lifelong history of right eye blindness with recurrent headaches and loss of depth perception as a result and observed that plaintiff would have difficulty performing activities that required normal vision and normal depth perception. (Tr. 157-67). Also, a state agency, reviewing physician opined that plaintiff is visually limited in the area of depth perception, noting that plaintiff is limited to monocular vision and should avoid hazards from the right, due to right eye blindness. (Tr. 198-203).

3

Next, plaintiff argues that the ALJ erred in failing to properly consider whether his impairments meet or equal Listing 12.08, Personality disorders, noting that the ALJ did not address Listing 12.08 in his decision, although plaintiff's attorney specifically argued this listing at the hearing. Plaintiff maintains that the "unstable interpersonal relationships and impulsive and damaging behavior date back to his childhood," citing his behavior problems in school and with the legal system, as well as his psychological testing.

Lastly, plaintiff contends that the ALJ erred in finding that he can return to his past relevant work as a kitchen worker. Moreover, the plaintiff insists that the "ALJ failed to cite testimony or other evidence in the record to arrive at a finding as to the physical and mental demands of the plaintiff's previous employment" and did not rely on vocational expert testimony to arrive at such a finding, although he does note that the ALJ stated that "the State Agency vocational specialist from Tennessee Department of Human Services assessed that the claimant could meet the requirements necessary to perform his past relevant work as a kitchen worker, provided he have no exposure to public work." (Tr. 19). Thus, plaintiff contends that the ALJ's finding regarding his past work is not supported by substantial evidence.

The Commissioner maintains that the ALJ explained his rationale at each step, and thus, plaintiff's arguments should be rejected. She asserts that the ALJ accepted state agency, reviewing psychologist Dr. Pestrak's assessment which considered Listing 12.08 and explains that the "B" criteria must be met before an individual can be found disabled. (Tr. 18-19, 175). The Commissioner notes that because the "B" criteria of the mental listings require two "marked" assessments or one "marked" limitation with repeated episodes of decompensation, plaintiff's arguments must fail. She maintains that the ALJ explained his

4

rationale for finding that plaintiff had only a mild limitation in his activities of daily living and in his ability to sustain concentration, persistence, or pace; moderate limitation in maintaining social functioning; and no evidence of decompensation, relying on Dr. Pestrak's opinion. (Tr. 17, 178). Thus, she insists that the fact that the ALJ did not type "12.08" in his decision is not a fatal error.

Also, the Commissioner notes that plaintiff has not established a marked limitation in his activities of daily living, noting that plaintiff "cared for his baby, read, watched television, drove, played with his toys, participated in housework and laundry, shopped with his girlfriend, mowed yards, helped people move, and collected and sold items at a flea market. (Tr. 17, 99, 159, 178). Drs. Bell and Wilson opined that plaintiff's concentration was largely intact and did not find that plaintiff could not work with others, but that he would do best in an environment that did not require sustained interaction with others. (Tr. 160, 162). Also, Dr. Pestrak opined that plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. (Tr. 178). The ALJ noted that plaintiff could maintain concentration enough to read, watch television, and drive and did not report any difficulty playing cards or completing the tasks of mowing yards for others, helping others move, or collecting items to sell at the flea market. (Tr. 17, 159). Next, the Commissioner maintains that although plaintiff cites to a variety of illegal activities, these were not based on a mental condition but on plaintiff's own choices and maintains that the plaintiff does not establish the required "repeated episodes of decompensation, each of extended duration" required by the "B" criteria of the mental listings. Although plaintiff points to a Global Assessment of Functioning ("GAF") score of 45, which appears to have been assigned by Ms. Patterson, a social worker, the Commissioner argues that

5

there does not appear to be a medical basis for the GAF score of 45.

Plaintiff challenges the ALJ's RFC and Step 4 findings, arguing the ALJ should have included limitations based on his right eye blindness, did not specifically address the requirements of medium work, and did not make a specific finding of fact concerning the physical and mental demands of his previous employment. The Commissioner maintains that both the ALJ and the vocational specialist were aware of the fact that plaintiff was born without the use of his right eye and notes that plaintiff does not even argue that his RFC should have been light or sedentary work instead of medium. (Tr. 125, 226). The Commissioner maintains that the ALJ was "generous" in his finding because there was no reason to find any exertional limitations, noting that although plaintiff complained of back pain, consultative examiner Dr. Summers stated that his examination revealed normal findings and that there was no objective evidence to support a physical impairment and that state agency, reviewing physician Dr. Knox-Carter determined plaintiff did not have any exertional limitations. (Tr. 160, 199).

Although the ALJ found plaintiff not disabled because he retained the ability to perform his past relevant work as a kitchen worker at Step 4, plaintiff argues that the ALJ did not make a specific finding of fact concerning the physical and mental demands of his previous employment. While the Commissioner acknowledges that "the ALJ could have expanded this section, she maintains that plaintiff's own description of his job, coupled with the statement of the vocational specialist allows the Court to see the ALJ's reasoning. The Commissioner explains that plaintiff described his kitchen worker job as washing dishes, walking and standing for two hours a day, and lifting 10 pounds frequently and 50 pounds occasionally. (Tr. 88). With these factors in mind, the vocational specialist stated that such an individual could perform the

6

job as a kitchen worker because the ALJ determined plaintiff could perform medium work and the vocational specialist explained that the kitchen worker job was medium work, the ALJ properly compared the exertional requirements. (Tr. 88, 125). The Commissioner maintains that the ALJ discharged his duty to weigh the medical evidence and to make a determination as to disability.

I find plaintiff's arguments unpersuasive. Although the ALJ found that plaintiff has a "severe" impairment of affective mood disorder, he did not find that it was a disabling impairment. (Tr. 20). While not referring to Dr. Pestrak by name, the ALJ did note that Dr. Pestrak found plaintiff had mild to moderate psychological limitations, stating that "[t]he assessments by the State Agency psychologist of mild limitations of daily activities, and maintaining concentration, persistence, or pace and moderate limitations in his ability to interact appropriately to be more consistent with the weight of the medical evidence as a whole." (Tr. 18-19, 178). Thus, as the Commissioner points out, plaintiff does not meet the "B" criteria of the mental listings. Further, although plaintiff contends that his attorney "argued" at the administrative hearing that he meets Listing 12.08, plaintiff's attorney's only statements regarding Listing 12.08 are as follows:

> That's it. Yeah, Your Honor, looking at the record
> and the RFC in 3F and the GAF scores it'd appear
> as though he'd meet 1208 given the severe
> problems that he has especially with the GAF
> scores and the statements in 3F that he likely to [be]
> unable to maintain mainstream employment –

(Tr. 227). The ALJ also noted that "[t]he claimant maintains a basic level of independence, adaptability, and effectiveness" and was not compliant with treatment and his medications. (Tr. 17, 209-10). Thus, based on the foregoing, the ALJ did not err in finding that plaintiff did not

7

meet Listing 12.08.

At the hearing level, the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. Once the ALJ determines a plaintiff's RFC, 20 C.F.R. §§ 404.1546, 416.946, he compares it to the requirements of plaintiff's past work. 20 C.F.R. §§ 404.1520(e), 404.1560(b), 416.920(e), 416.960(b). If that past job did not require plaintiff to perform activities in excess of his RFC, plaintiff will be found not disabled. 20 C.F.R. §§ 404.1520(e), 404.1560(b), 404.1561, 416.920(e), 416.960(b).

The ALJ noted that "[t]he State Agency vocational specialist from Tennessee Department of Human Services assessed that the claimant could meet the requirements necessary to perform his past relevant work as a kitchen worker, provided he have no exposure to public work." (Tr. 19, 125-26). Moreover, consultative examiner Dr. Summers and state agency physician Dr. Knox-Carter both found plaintiff did not have any objective medical basis for any exertional restrictions, and therefore, I agree with the Commissioner that the ALJ was "generous" in his RFC finding of medium work. (Tr. 164-67, 198-203). Although plaintiff insists that the ALJ did not consider his right eye blindness in his RFC finding, the ALJ did find this impairment "severe," but did not find it disabling in light of the fact that plaintiff was born without his right eye and has worked in the past. (Tr. 20, 226). Finally, although plaintiff complains that the ALJ did not rely on VE testimony to find he could perform his past work, testimony from a VE is not required at Step 4 in order to find a claimant can perform his past relevant work. Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997).

Therefore, in light of the foregoing, it is hereby **RECOMMENDED**[1] that the

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.

8

plaintiff's motion for summary judgment [Doc. 10] be **DENIED** and that the defendant's motion for summary judgment [Doc. 12] be **GRANTED**.

                                        Respectfully submitted,

                                            s/H. Bruce Guton
                                        United States Magistrate Judge

---

Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

9

Case 3:06-cv-00037   Document 14   Filed 06/30/06   Page 9 of 9   PageID #: 9